UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x

GOVERNMENT EMPLOYEES
INSURANCE CO., et al.,                                      MEMORANDUM AND ORDER

              Plaintiffs,                              10 Civ. 4341 (ILG) (RML)

    - against -

HOLLIS MEDICAL CARE, P.C., et al.

             Defendants.
------------------------------------------------------x

GLASSER, Senior United States District Judge:

In this civil action arising under, among other things, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. ("RICO"), plaintiffs the Government Employees Insurance Co., Geico Indemnity Co., Geico General Insurance Company, Geico Casualty Co. (together "Geico") have filed a motion pursuant to Rule 6.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York seeking reconsideration of the Court's Memorandum and Order dated September 1, 2011 (the "Order") that granted in part the motion of several alleged owners and employees of Hollis Medical Care P.C. ("Hollis")—Simon Davydov, Mikhail Davydov, Ruben Davydov, Emanuel David, Sophia David, Berta Nektalov, and several John Doe defendants (together the "management defendants")—to dismiss Geico's complaint pursuant to Rules 8(a), 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure.  Geico specifically seeks reconsideration of the Court's (1) dismissal of Geico's substantive RICO and RICO conspiracy claims against the management defendants; and (2) sua sponte dismissal of the common law fraud claims against the John Doe management defendants.

1

For the reasons set forth below, Geico's motion is hereby GRANTED.

## I.  BACKGROUND

The background to this action is also in the Order, see Gov't Emps. Ins. Co. v. Hollis Med. Care P.C., No. 10 Civ. 4341 (ILG), 2011 WL 4012441, at *1-2 (Sept. 1, 2011), and familiarity with the facts underlying this action is assumed.  A brief review of the relevant facts alleged in the complaint is nevertheless necessary, and they are assumed to be true for the purposes of this motion.

Geico filed its complaint on September 23, 2010 alleging, among other things, fraud, substantive RICO, and RICO conspiracy claims against the management defendants and Hollis's alleged nominal owners.  Complaint dated Sept. 22, 2010 ("Compl.") (Dkt. No. 1).  The gist of the complaint is that Hollis, an unlawfully incorporated professional corporation under the direction of the non-physician management defendants, obtained two million six hundred thousand dollars in "no fault benefits" from Geico for patient healthcare services that Hollis was not entitled to receive.  Compl. ¶¶ 1-2, 33.[1]  Hollis was not entitled to receive these payments because although Hollis has always been nominally owned by a licensed physician on paper, it is actually operated by the management defendants—none of whom is a licensed

---

[1] "Patients covered by no-fault insurance often assign their claims to their health care providers rather than seek reimbursement from insurance carriers directly."  State Farm Mut. Auto Ins. Co. v. Mallela, 4 N.Y.3d 313, 319, 794 N.Y.S.2d 700, 827 N.E.2d 758 (2005) (citing 11. N.Y.C.R.R. § 65-3.11)).

physician.  Compl. ¶ 2, 33.[2]  The past nominal owners of Hollis were Drs. Prasad

Chalasani, Elizabeth Goldstein, and David Hsu.  Compl. ¶¶ 9-11.[3]

The management defendants' scheme began on or around July 24, 2004 when

they recruited Dr. Chalasani to effectively "sell" his medical license to Hollis.  Compl. ¶

35.  In exchange for a designated salary or other form of compensation, Dr. Chalasani

agreed to falsely represent in Hollis's certificate of incorporation that he was the true

shareholder, director, and officer of Hollis and that he truly owned, controlled and

practiced through the corporation, when he in fact had no ownership interest in or

control of Hollis and did not practice through it.  Compl. ¶¶ 37-38.  Instead, the

management defendants exercised all decision-making authority relating to the

operation and management of Hollis by, for example, managing its bank accounts and

records and making decisions regarding the hiring and management of the doctors,

nurses, and others who performed services there.  Compl. ¶ 38.

In or around June 2007, Dr. Chalasani transferred his purported ownership

interest in Hollis to Dr. Goldstein.  Compl. ¶ 42.  Dr. Goldstein did not pay Dr. Chalasani

fair value for the ownership interest, invest any of her own money in the corporation, or

review any of Hollis's books or records prior to obtaining Dr. Chalasani's interest in

Hollis.  Compl. ¶ 43.  And, like Dr. Chalasani, she exercised no control over the

_____

[2] Only a professionally licensed individual may be a director or officer of the professional services corporation such as Hollis, N.Y. Bus. Corp. § 1508 (McKinney 2005), and thus only physicians may share in the corporation's ownership, see Mallela, 4 N.Y.3d at 319.

[3] After Geico and each of the alleged nominal owners of Hollis reached a settlement, the Court dismissed the claims against them.  Order dated May 25, 2011 (Dkt. No. 54).

corporation.  Compl. ¶ 43.  More than a year later, in July 2008, Hollis ended its

relationship with Dr. Goldstein, and the management defendants then hired Dr. Hsu to

become the nominal owner of Hollis; like Drs. Chalasani and Goldstein before him, he

did not pay fair value for the shares he acquired in Hollis, invest any of his own money

in the corporation, or review any of Hollis's books or records prior to obtaining the

ownership interest.  Compl. ¶ 44.  He did not in any way control Hollis either.  Compl.

¶¶ 45-46.

Instead, the management defendants exercised complete control over Hollis and

directed the provision of healthcare services to maximize the billing submitted to

insurers, including Geico, through the following fraudulent schemes.  Compl. ¶¶ 50-96.

First, Hollis provided initial patient examinations that were billed at an inflated rate

that misrepresented and exaggerated the level of medical decision-making and services

provided by its physicians.  Compl. ¶¶ 53-56.  Second, Hollis referred virtually every one

of its patients for a consultation with a physiatrist—a physician specializing in

rehabilitation—who purportedly performed and interpreted various diagnostic tests, an

approach not tailored to the needs of each patient or based on medical necessity.

Compl. ¶¶ 57-62.  Third, Hollis billed Geico for, and its physicians purported to perform,

manual range of motion and muscle strength testing on nearly every patient despite the

fact that each patient had already undergone such testing during his or her initial

examination.  Compl. ¶¶ 63-67.  Fourth, nearly every patient, after receiving an

examination at Hollis, would be sent for treatments such as physical therapy and

acupuncture, regardless of medical necessity or the patients' desire to have such

treatments.  Compl. ¶¶ 82-84.  These treatments were usually performed by specialists

who rented space from Hollis at its clinic and who paid the management defendants kickbacks for these referrals that took the form of rent.  Compl. ¶ 84.  Fifth, healthcare providers at or associated with Hollis prescribed medical equipment and devices for patients from a specific medical supplier without regard to medical need, and the management defendants, in exchange, received kickbacks from the supplier.  Compl. ¶¶ 68-76.  Finally, Hollis's physicians referred patients for psychiatric services at certain facilities without regard to the patients' conditions and sometimes over their objections, and the management defendants received kickbacks from the facilities in exchange.  Compl. ¶¶ 77-81.

In order to obtain payments from Geico and other insurers for all of these services, the management defendants either submitted or caused to be submitted statutorily prescribed claim forms for No-Fault Benefits ("NF-3 Forms").  Compl. ¶ 87.  These forms not only represented that Hollis was lawfully licensed and therefore eligible to receive no-fault benefits under New York Ins. Law § 5102 but also that the services were medically necessary and in fact actually performed.  Compl. ¶ 88.  Geico has attached to the complaint a sample of the NF-3 Forms the management defendants mailed to it.  Compl. Ex. 7.

On December 3, 2010, the management defendants moved to dismiss the complaint pursuant to Rules 8(a), 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure.  Memorandum of Law in Support of Motion to Dismiss dated December 3, 2010 ("Defs.' Mot. to Dismiss") (Dkt. No. 31).  Geico filed its opposition on February 4, 2011, Opposition to Motion to Dismiss dated February 4, 2011 ("Pl.'s Opp'n") (Dkt. No.

35), and the management defendants filed their reply on June 24, 2011, Corrected Reply dated June 24, 2011 ("Defs.' Reply") (Dkt. No. 52).

The Court on September 1, 2011 granted the motion of the management defendants to dismiss the substantive RICO and RICO conspiracy claims against them and <u>sua sponte</u> dismissed the common law fraud claims against the John Doe management defendants.  <u>Hollis</u>, 2011 WL 4012441, at *3-4 & n.9.  On September 12, 2011, Geico timely filed its motion for reconsideration of those rulings, <u>see</u> Memorandum of Law in Support of Motion to Reconsider Order dated September 12, 2011 ("Pl.'s Mem.") (Dkt. No. 71), and the motion for reconsideration is now fully briefed.  Memorandum of Law in Opposition to Motion to Reconsider Order dated October 21, 2011 ("Defs.' Opp'n") (Dkt. No. 77); Reply Memorandum of Law in Further Support of Motion to Reconsider Order dated November 1, 2011 ("Pl.'s Reply") (Dkt. No. 78).

## II. DISCUSSION

### A. Legal Standard

Local Civil Rule 6.3 provides, in relevant part, "[a] notice of motion for reconsideration or reargument of a court order determining a motion shall be served within fourteen (14) days after the entry of the Court's determination of the original motion, . . . . There shall be served with the notice of motion a memorandum setting forth concisely the matters or controlling decisions which counsel believes the Court has overlooked . . . ."  Reconsideration of an order pursuant to this rule is appropriate "to correct a clear error or prevent a manifest injustice."  <u>Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.</u>, 956 F.2d 1245, 1255 (2d Cir. 1992) (citations omitted); <u>accord Munafo v.</u>

Metro. Transp. Auth., 381 F.3d 99, 105 (2d Cir. 2004).  "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995).  The decision to grant or deny this motion is within the sound discretion of this Court.  See McCarthy v. Manson, 714 F.2d 234, 237 (2d Cir. 1983).

Geico maintains that the Court's conclusion that the complaint fails to allege facts sufficient to support a claim that the management defendants meet RICO's distinctness requirement was erroneous because the Court overlooked certain allegations in the complaint and the applicability of the Supreme Court's decision in Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 121 S. Ct. 2087, 150 L. Ed. 2d 198 (2001), and its progeny to the circumstances here.  Pl.'s Mem. at 3-9.  Geico also argues that the Court's dismissal of the common law fraud claims against the John Doe management defendants misapplied or overlooked relevant case law because the dismissal occurred before Geico had an opportunity to pursue discovery to learn the identity of the parties. Pl.'s Mem. at 12-13.  Geico thus seeks reinstatement of the RICO and fraud claims.

The Court will address each of these contentions in turn below.

**B. Civil RICO Act Claims**

Geico alleges that the management defendants committed substantive RICO offenses in violation of 18 U.S.C. § 1962(c) and conspired to violate RICO in violation of 18 U.S.C. § 1962(d).  A substantive civil RICO claim has three elements: (1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the

injury was caused by the violation of Section 1962.[4]  Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 183 (2d Cir. 2008).[5]  To plead a violation of Section 1962(c), a plaintiff must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity" for each individual defendant.  DeFalco v. Bernas, 244 F.3d 286, 306 (2d Cir. 2001) (citations omitted).

### 1. Enterprise

Whether Geico's complaint adequately pleads a RICO enterprise is the threshold matter under review here.  In the Order, the Court concluded that it did not and dismissed Geico's substantive RICO and RICO conspiracy claims against the management defendants, reasoning that the allegations in the complaint did not show that the management defendants were sufficiently distinct from Hollis.  GEICO, 2011 WL 4012441, at *3.  Now having the occasion to revisit this ruling, the Court concludes that it was made in error and that the Supreme Court's decision in Cedric Kushner Promotions requires that it be confessed.

To plead a RICO violation, a plaintiff "must allege . . . the existence of two distinct entities:  (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name."  Cedric Kushner Promotions, 533 U.S. at 161-62; see also Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A., 30 F.3d 339, 344 (2d

---

[4] The management defendants do not argue that Geico has failed to sufficiently plead proximate cause or injury.

[5] 18 U.S.C. § 1962(c) makes it unlawful

for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . .

Cir. 1994) (concluding that the same corporate entity cannot be the RICO "person" and the RICO "enterprise" under section 1962(c)).  18 U.S.C. § 1961(3) defines a person as including "any individual or entity capable of holding a legal or beneficial interest in property."  Meanwhile, 18 U.S.C. § 1961(4) defines an "enterprise" as including "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  A RICO enterprise "'is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.'"  United States v. Applins, 637 F.3d 59, 73 (2d Cir. 2011) (quoting United States v. Turkette, 452 U.S. 576, 583, 101 S. Ct. 2524, 69 L. Ed. 2d 246 (1981)).  The enterprise requirement "is most easily satisfied when the enterprise is a formal legal entity."  First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 173 (2d Cir. 2004).

Here, Geico alleges that Hollis is the "enterprise" and that the management defendants are the RICO persons that have been associated with Hollis and knowingly conducted and/or participated in its affairs.  Compl. ¶¶ 103-04, 110-12.[6]  Geico correctly notes that under Cedric Kushner Promotions, these allegations are sufficient to plead the existence of two distinct entities, thus satisfying RICO's enterprise requirement.  Pl.'s Mem. at 5.

In Cedric Kushner Promotions, the Supreme Court reversed and remanded the Second Circuit's decision affirming the dismissal of the plaintiff's complaint alleging

---

[6] Geico does not allege an association-in-fact enterprise and thus, contrary to the management defendants' assertions, Defs.' Mot. to Dismiss at 21-22, the Court need not consider whether Geico has sufficiently pleaded the "hierarchy, organization, and activities" of the alleged enterprise.  Satinwood, 385 F.3d at 174.

RICO violations by Don King, the sole shareholder of Don King Productions.  533 U.S. at

161-62.  Relying on its own precedent that a corporation and its employees cannot

constitute an enterprise, the Second Circuit concluded that King was not a "person" who

was distinct from "the enterprise," but rather was part of it.  Id. at 161.  The Supreme

Court rejected this approach:

> While accepting the "distinctness" principle, we nonetheless disagree with
> the appellate court's application of that principle to the present
> circumstances—circumstances in which a corporate employee, acting
> within the scope of his authority, allegedly conducts the corporation's
> affairs in a RICO-forbidden way. The corporate owner/employee, a natural
> person, is distinct from the corporation itself, a legally different entity with
> different rights and responsibilities due to its different legal status.  And
> we can find nothing in the statute that requires more "separateness" than
> that.

Id. at 163 (internal citations and quotation marks omitted).  Further, the Supreme Court

distinguished, on factual grounds, the earlier precedent upon which the Second Circuit

relied, noting that while the case before it concerned a claim that a corporate employee

is the "person" and the corporation is the "enterprise," the earlier precedent "concerned

a claim that a corporation was the 'person' and the corporation, together with all its

employees and agents, were the 'enterprise.'"  Id. at 164 (citing Riverwoods, 30 F.3d at

344).

The allegations here meet the distinctness requirement because the management

defendants—all natural persons—are legally distinct from Hollis—the enterprise—even

though they were each employees of Hollis.  Moreover, unlike in Riverwoods, the

complaint contains no allegation that Hollis was the "person" and that the management

defendants and Hollis were the enterprise.  Just the opposite; as in Cedric Kushner

Promotions, Geico alleges that the corporation, Hollis, is the "enterprise" and its

employees, the management defendants, the RICO persons.  Compl. ¶¶ 103-04, 110-112.
The complaint thus has adequately alleged a valid RICO enterprise as to the
management defendants.  See, e.g., Acme Am. Repairs, Inc. v. Katzenberg, No. 03 Civ.
4740 (RRM) (SMG), 2010 WL 3835879, at *5 (E.D.N.Y. Sept. 24, 2010) (citing Kushner,
533 U.S. at 164) (enterprise adequately pleaded because corporation alleged to be RICO
enterprise had separate legal identity distinct from that of defendant shareholders);
Allstate Ins. Co. v. Rozenberg, 590 F. Supp. 2d 384, 391 (E.D.N.Y. 2008) (same).[7]

Since the Order dismissed Geico's substantive RICO and RICO conspiracy claims
for failure to adequately plead an enterprise, the Court cannot grant Geico the relief it
seeks—reinstatement of these claims—without first determining whether the complaint
sufficiently pleads the other elements of those claims given the management defendants'
motion to dismiss pursuant to Rules 8(a), 9(b), and 12(b)(6) of the Federal Rules of Civil
Procedure.

Rule 8(a)(2) requires a complaint to include "a short and plain statement of the
claim showing that the pleader is entitled to relief."  To survive a motion to dismiss
pursuant to Rule 12(b)(6), Geico's pleading must contain "sufficient factual matter,
accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal,
556 U.S. 662, 129 S. Ct. 1937, 1940, 173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v.

---

[7] The Court rejects the management defendants' contention that Geico's motion
for reconsideration should be denied because it raises new arguments not previously
presented to the Court.  Defs.' Opp'n at 2-4.  The Court dismissed the substantive RICO
and RICO conspiracy claims against the management defendants on grounds not raised
in their motion papers, see Defs.' Mot. to Dismiss at 13 (arguing that since Hollis is the
RICO enterprise, the claims against it should be dismissed) and GEICO thus never had
the opportunity to brief the issue.  In any event, reconsideration is appropriate where, as
here, there is a need to correct a clear error of law.  See, e.g., Munafo, 381 F.3d at 105.

Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).[8]  A claim has

facial plausibility "when the plaintiff pleads factual content that allows the Court to draw

the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal,

129 S. Ct. at 1949.  Although detailed factual allegations are not necessary, the pleading

must include more than an "unadorned, the-defendant-unlawfully-harmed-me

accusation;" mere legal conclusions, "a formulaic recitation of the elements of a cause of

action," or "naked assertions" by the plaintiff will not suffice.  Id. at 1949 (alteration in

original) (internal quotations, citations, and alterations omitted).  This plausibility

standard "is not akin to a 'probability requirement,' but it asks for more than a sheer

possibility that a defendant has acted unlawfully."  Id. (quoting Twombly, 550 U.S. at

556).

In determining whether Geico sufficiently pleads the remaining elements of its

substantive RICO and RICO conspiracy claims, the Court will apply these principles in

turn below.  And, consistent with management defendants' request, Defs.' Opp'n at 4,

the Court will consider the arguments they previously made in support of their motion

to dismiss the complaint.

### 2.  Participation

The Court must first determine whether each of the management defendants

conducted or participated, directly or indirectly, in the conduct of the enterprise's

---

[8]  In addition to the facts alleged in the complaint, a district court considering a
motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) "may also consider . . . documents
attached to the complaint as exhibits, and documents incorporated by reference in the
complaint."  DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citing
Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)).

affairs. 18 U.S.C. § 1962(c). The Supreme Court has concluded that "to conduct or participate, directly or indirectly, in the conduct" of an enterprise's affairs "one must participate in the operation or management of the enterprise itself." Reves v. Ernst & Young, 507 U.S. 170, 185, 113 S. Ct. 1163, 122 L. Ed. 2d 525 (1993). While it is not necessary under this test for a defendant to have primary responsibility over the enterprise's affairs, or even hold a formal position in the enterprise, a plaintiff must still show that the defendant took "some part in directing those affairs." State Farm Mut. Automobile Ins. Co. v. CPT Med. Servs., No. 04 Civ. 5045 (ILG), 2008 WL 4146190, at *11 (E.D.N.Y. Sept. 5, 2008) (quoting Reves, 507 U.S. at 179). It is not enough merely to "take directions and perform tasks that are necessary and helpful to the enterprise or provide goods and services that ultimately benefit the enterprise; it is required that the provision of these services allow the defendant to direct the affairs of the enterprise." Id. (citation, internal quotation marks, and alterations omitted).

Geico's complaint offers sufficient factual allegations to show that the management defendants participated in the alleged enterprise. Geico alleges that in exchange for payments from the management defendants, the nominal owners (1) effectively sold their medical licenses to Hollis; (2) falsely represented that they were the true owners of Hollis when in fact they played no role in its actual operation and management; and (3) along with the management defendants and Hollis, entered into a number of complex financial agreements designed to vest the management defendants with total control over Hollis while concealing the nature of the management defendants' influence. Compl. ¶¶ 37, 40, 43, 46-47. Geico further alleges that as a result of their total control of Hollis, the managements defendants prepared fraudulent bills

that (1) misrepresented and exaggerated the level of medical decision-making and services provided by Hollis; and (2) were for unnecessary or duplicative medical services or services never provided.  Compl. ¶¶ 53-67.  Likewise, Geico avers that the management defendants received kickbacks from a supplier of medical devices prescribed to patients who didn't need them by doctors associated with Hollis and from psychiatrists to whom patients were referred without regard to their need for such referrals.  Compl. ¶¶ 68-81.  These allegations are sufficient to explain how the management defendants participated in the management of the enterprise.  See, e.g., CPT Med. Servs., 2008 WL 4146190, at *11 (allegations that non-physician defendants actually controlled medical corporations, siphoned profits by preparing and submitting fraudulent bills to insurance company on behalf of medical corporations and arranged for payment of kickbacks sufficient to establish participation in enterprise's affairs under civil RICO act); Allstate Ins. Co. v. Valley Physical Med. & Rehabilitation, P.C., No. 05 Civ. 5934 (DRH) (MLO), 2009 WL 3245388, at *8-9 (E.D.N.Y. Sept. 30, 2009) (motion to dismiss civil RICO claim denied where, among other things, complaint alleged that doctor defendants sold the use of their names and licenses so that professional corporations could be formed and that non-physicians actually managed the corporations and engaged in fraudulent no-fault billing).[9]

---

[9] The management defendants contend that each of these cases is factually distinguishable from the circumstances here—CPT on the grounds that the tests at issue in that case were of no medical value, a fact confirmed by scientific journals and scientific reports, and Valley on the grounds that discovery in a prior case had produced evidence that a non-physician actually owned the professional corporations.  Defs.' Reply at 4-5.  The Court disagrees.  The question on a 12(b)(6) motion "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'"  Todd v. Exxon Corp., 275 F.3d 191, 198 (2d Cir. 2001) (quoting

### 3.  Predicate Acts

RICO defines "racketeering activity" to include certain predicate criminal acts including mail fraud.  S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp., 84 F.3d 629, 633 (2d Cir. 1996).  A plaintiff asserting a mail fraud claim must allege (1) "the existence of a scheme to defraud, (2) defendant's knowing or intentional participation in the scheme, and (3) the use of interstate mails or transmission facilities in furtherance of the scheme."  Id. at 633 (citation omitted).  The allegations, moreover, must meet the particularity requirements of Fed. R. Civ. P. 9(b).  See Mills v. Polar Molecular Corp., 12 F.3d 1170, 1176 (2d Cir. 1993).[10]  In order to satisfy this requirement, the complaint must ordinarily "(1) specify the statements that the plaintiff contends were fraudulent; (2) identify the speaker; (3) state where and when the statements were made; and (4) explain why the statements were fraudulent."  Id. at 1175 (citation omitted).  The management defendants argue that the predicate acts of mail fraud alleged in the complaint fail to meet these requirements.  Defs.' Mot. to Dismiss at 14-17.

The management defendants fail to recognize that in complex civil RICO actions involving multiple defendants, Rule 9(b) does not require that the "'temporal or geographic particulars of each mailing made in furtherance of the fraudulent scheme be

---

Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)).  At this stage of the litigation, the complaint contains sufficient factual allegations regarding the management defendants' participation in the enterprise's affairs to allow Geico to offer evidence to support its claims; the fact that evidence supported the allegations at issue in CPT and Valley at the time of the filing of the complaint in those actions is of no consequence here.

[10] Fed. R. Civ. P. 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

stated with particularity,'" but requires instead only that the "'plaintiff delineate, with
adequate particularity in the body of the complaint, the specific circumstances
constituting the overall fraudulent scheme.'"  AIU Ins. Co. v. Olmecs Med. Supply, Inc.,
No. 04 Civ. 2934 (ERK), 2005 WL 3710370, at *11 (E.D.N.Y. Feb. 22, 2005) (quoting In
re Sumitomo Copper Litig., 995 F. Supp. 451, 456 (S.D.N.Y. 1998)); see also S. Ill.
Laborers' and Emp'rs Health & Welfare Fund v. Pfizer Inc., No. 08 Civ. 5175 (KMW),
2009 WL 3151807, at *4 n.10 (S.D.N.Y. Sept. 30, 2009); Evercrete Corp. v. H-Cap. Ltd.,
429 F. Supp. 2d 612, 624 (S.D.N.Y. 2006).

     This complaint describes the specific circumstances constituting the overall
fraudulent scheme in detail, and it includes an exhibit of samples of a number of the
fraudulent submissions mailed or caused to be mailed by the management defendants
on specific dates and times.  Compl. ¶ 104 & Ex. 7.  Further, the complaint alleges that
each of the management defendants are connected to the scheme in that each "could
reasonably have foreseen" that the mail would be used "in the ordinary course of
business as a result of" their acts—all that is required under the mail fraud statute.
United States v. Bortnovsky, 879 F.2d 30, 36 (2d Cir. 1989).  Indeed, the very basis of
the management defendants' fraudulent scheme was their submission of fraudulent bills
through Hollis to Geico by use of the mail.  Compl. ¶¶ 50-88.  Finally, the facts alleged in
the complaint and contained in the exhibits regarding the management defendants'
predicate acts are substantially similar to those that this Court and others in this district
have previously found to be sufficient.  See, e.g., Allstate Ins. Co. v. Halima, No. 06 Civ.
1316 (DLI) (SMG), 2009 WL 750199, at *5 (E.D.N.Y. Mar. 19, 2009) (Rule 9(b) satisfied
where plaintiffs included with complaint sample of allegedly fraudulent bills submitted

to insurer for medically unnecessary services); <u>Valley</u>, 2009 WL 3245388, at *9 (Rule

9(b) satisfied where exhibits to complaint contained specifics such as the patient

involved, the dates of allegedly fraudulent bills and when they were mailed to plaintiff

insurer); <u>CPT Med. Servs.</u>, 2008 WL 4146190, at *12 (citing <u>Moore v. Painewebber. Inc.</u>,

189 F.3d 165, 173 (2d Cir. 1999)) (Rule 9(b) satisfied where plaintiff attached to

complaint exhibits indicating, among other things, the dates certain fraudulent bills

regarding medical treatments were submitted to insurer).  Geico thus has adequately

pleaded a RICO claim predicated on mail fraud that satisfies the particularity

requirements of Rule 9(b).[11]

### 4. Pattern

The complaint also sufficiently alleges a pattern of racketeering activity.  A

pattern requires "at least two acts of racketeering activity, . . . the last of which occurred

within ten years . . . after the commission of a prior act of racketeering activity."  18

---

[11] The Court rejects the management defendants' argument that the complaint does not allege facts strongly supporting an inference of scienter. Defs.' Mot. to Dismiss at 18.  In order to satisfy the scienter requirement, a plaintiff must allege either:  (1) facts which demonstrate that the defendant had both the motive and a clear opportunity to commit the fraud; or (2) facts which show strong circumstantial evidence of conscious behavior or recklessness by the defendants.  <u>Powers v. British Vita, P.L.C.</u>, 57 F.3d 176, 184 (2d Cir. 1995).

"When courts speak of 'clear opportunity to commit fraud,' they do not envision the kind of elaborate plot that is alleged to have unfolded in this case." <u>Id.</u> at 185.  The complaint shows strong circumstantial evidence of conscious behavior by the management defendants, however, as it alleges, among other things, that the management defendants (1) purchased the nominal owner's medical licenses; (2) permitted Hollis to be illegally incorporated in their names; (3) used Hollis as a vehicle for the submission of fraudulent claims to Geico; and (4) directed the provision of medical services at Hollis in order to maximize the submission of these fraudulent claims.

U.S.C. § 1961(5).  "To establish a pattern, a plaintiff must also make a showing that the predicate acts of racketeering activity by a defendant are 'related, and that they amount to or pose a threat of continued criminal activity.'"  <u>DeFalco</u>, 244 F.3d at 321 (quoting <u>H.J. Inc. v. Nw. Bell Tel. Co.</u>, 492 U.S. 229, 239, 109 S. Ct. 2893, 106 L. Ed. 2d 195 (1989)).

"The latter so-called 'continuity' requirement can be satisfied either by showing a 'closed-ended' pattern—a series of related predicate acts extending over a substantial period of time—or by demonstrating an 'open-ended' pattern of racketeering activity that poses a threat of continuing criminal conduct beyond the period during which the predicate acts were performed."  <u>Spool</u>, 520 F.3d at 183 (citations omitted).

The management defendants argue that the complaint fails to plead both closed-ended continuity and open-ended continuity.  Defs.' Mot. to Dismiss at 18-21.  They maintain that the complaint alleges predicate acts of mail fraud by a small number of participants against a single victim, involving essentially a single scheme insufficient to establish closed-ended continuity.  <u>Id.</u> at 18-20.  Additionally, they argue that the complaint fails to establish open-ended continuity because it does not allege a threat of continuing criminal activity by them.  <u>Id.</u> at 20-21.  Geico persuasively responds that the complaint contains sufficient facts to show both open-ended and closed-ended continuity.  Pl.'s Mem. at 27-33.

"A closed-ended pattern of racketeering activity involves predicate acts 'extending over a substantial period of time.'"  <u>Satinwood</u>, Inc., 385 F.3d at 181 (quoting <u>GICC Capital Corp. v. Tech. Fin. Grp.</u>, 67 F.3d 463, 466 (2d Cir. 1995)).  "Although continuity is 'primarily a temporal concept, other factors such as the number and variety

18

of predicate acts, the number of both participants and victims, and the presence of separate schemes are also relevant in determining whether closed-ended continuity exists.'" Id. (quoting De Falco, 244 F.3d at 321).

Here, Geico alleges that the management defendants submitted or caused to be submitted via the mail over 46,000 separate fraudulent claims to it over a six year period beginning as early as July 2004.  Compl. ¶¶ 1, 7 & Ex. 1.  It further alleges that the predicate acts of mail fraud "are essential in order for Hollis to function."  Compl. ¶ 105. In other words, Geico alleges the management defendants committed the predicate acts as a "regular way of conducting the [management] defendants' ongoing business."  Nw. Bell Tel. Co., 492 U.S. at 250.  Finally, other victims of the fraud—the State of New York and other insurers—are alleged as well.  See, e.g., Compl. ¶¶ 6, 37, 91.  For all of these reasons, the complaint sufficiently alleges a closed-ended pattern of racketeering activity.[12]  See, e.g., Valley, 2009 WL 3245388, at *8 (closed-ended continuity sufficiently alleged where numerous predicate acts occurred over a number years and state of New York and other insurers were also alleged as victims); State Farm Mut. Auto. Ins. Co. v. Valery Kalika, No. 04 Civ. 4631 (CBA), 2006 WL 6176152, at *16 (E.D.N.Y. Mar. 16, 2006) (closed-ended continuity established where 1,256 separate fraudulent claims submitted to insurer over a four-year period).

In sum, Geico has sufficiently alleged that the management defendants committed a substantive RICO offense in violation of 18 U.S.C. § 1962(c).  Thus, the Section 1962(c) claims against the management defendants are hereby reinstated.

---

[12] In light of this conclusion, the Court need not address the parties' contentions regarding open-ended continuity.

### 5.  Section 1962(d) Conspiracy Claims

Geico's Section 1962(d) claims must be reinstated as well.  "In addition to the substantive elements of a RICO claim, to state a claim under Section 1962(d), a plaintiff must also allege that 'each defendant, by words or actions, manifested an agreement to commit two predicate acts in furtherance of the common purpose of a RICO enterprise.'" CPT Med. Servs., 2008 WL 4146190, at *14 (quoting Colony v. Holbrook, Inc. v. Strata, Inc., 928 F. Supp. 1224, 1238 (E.D.N.Y. 1996)).  The Second Circuit has explained that this agreement may be shown if a defendant "'possessed knowledge of only the general contours of the conspiracy.'" Applins, 637 F.3d at 75 (quoting United States v. Zichettello, 208 F.3d 72, 100 (2d Cir. 2000)); see also United States v. Yannotti, 541 F.3d 112, 122 (2d Cir. 2008) ("[T]o be found guilty of RICO conspiracy, a defendant need only know of, and agree to, the general criminal objective of a jointly undertaken scheme." (citing Salina v. United States, 522 U.S. 52, 63, 118 S. Ct. 469, 139 L. Ed. 2d 352 (1997))).

Contrary to the management defendants' assertion that the complaint only contains conclusory allegations regarding an agreement among them, Defs.' Mot. to Dismiss at 25, Geico has sufficiently alleged a conspiracy under the relatively low standard set forth above.  The complaint not only alleges that each of the management defendants possessed knowledge of the general contours of the conspiracy, but also that they had knowledge of their co-conspirators' roles in committing, or causing to be committed, the submission of fraudulent claims to Geico—the predicate acts of mail fraud.  See, e.g., Compl. ¶¶ 33-51, 87-88 & Ex. 7.  Indeed, the complaint alleges in detail the management defendants' roles in establishing and directing the various schemes at

Hollis that ultimately resulted in the submission of these claims to Geico.  Compl. ¶¶ 53-86.  Accordingly, "[Geico] has not only alleged that the [management] defendants agreed to participate in the scheme, but that they had knowledge that the scheme would ultimately result in the mailing of fraudulent bills to [Geico]," and the complaint therefore has sufficiently alleged violations Section 1962(d) by the management defendants.  CPT Med. Servs., 2008 WL 4146190, at *14; see also Allstate Ins. Co. v. Etienne, No. 09 Civ. 3582 (SLT) (RLM), 2010 WL 4338333, at *8-9 (E.D.N.Y. Oct. 26, 2010).  Geico's Section 1962(d) claims against the management defendants are therefore hereby reinstated.[13]

## C.  Fraud Claims Against the John Doe Defendants

Having addressed Geico's contentions in its motion for reconsideration as to its RICO claims against the management defendants, the Court now turns to its contentions regarding the Court's sua sponte dismissal with prejudice of the common law fraud causes of action against the John Doe management defendants.  Hollis, 2011 WL 4012441, at *4 n.9.  Geico maintains that the Court misapplied or overlooked relevant case law counseling against dismissal of claims against John Doe defendants

---

[13] The management defendants contend that the Court should "require GEICO to provide a RICO statement in the event the Court . . . declines to dismiss the RICO claims."  Defs.' Opp'n at 4.  They argue that a RICO statement is required to "sharpen and clarify the issues, confirm the completeness of the Complaint's assertions or highlight it [sic] pleading deficiencies."  Defs.' Mem. at 26.  The Court sees no reason to do so.  It is not this Court's practice to require plaintiffs asserting civil RICO claims to file RICO statements as a matter of course.  Moreover, it is clear from the foregoing discussion that Geico has sufficiently pleaded its RICO claims and that the issues in this case require no further clarification at this juncture.

before a plaintiff has had ample opportunity to pursue discovery to learn their identities. Pl.'s Mem. at 13.  The Court agrees.

Though it is true that, "as a general rule, the use of 'John Doe' to identify a defendant is not favored," Feliciano v. Cnty. of Suffolk, 419 F. Supp. 2d 302, 313 (E.D.N.Y. 2005), the Second Circuit has explained that "courts have rejected the dismissal of suits against unnamed defendants . . . identified only as 'John Doe's,' until the plaintiff has had some opportunity for discovery to learn the identities of responsible officials." Davis v. Kelly, 160 F.3d 917, 921 (2d Cir. 1998) (error for district court to dismiss pro se plaintiff's section 1983 claims against unnamed prison officials without providing him opportunity to learn their identity through discovery); see also Kearse v. Lincoln Hosp., No. 07 Civ. 4730 (PAC) (JCF), 2009 WL 1706554, at *3 (S.D.N.Y. June 17, 2009) ("Courts typically resist dismissing suits against John Doe defendants until the plaintiff has had some opportunity for discovery to learn the[ir] identities . . . ." (internal quotation marks and citation omitted)).  And courts in this circuit and others apply this principle to both represented and pro se plaintiffs alike.  See, e.g., Bangura v. Cnty. of Nassau, No. 07 Civ. 2966 (DRH) (ETB), 2009 WL 57135, at *6 (E.D.N.Y. Jan. 7, 2009) (denying represented plaintiff's motion for judgment on the pleadings on claim against John Doe defendants); 5A C. Wright, et al., Federal Practice & Procedure § 1321 (3d ed. 2005) (citations omitted) ("[M]ost federal courts typically will allow the use of a fictitious name in the caption so long as it appears that the plaintiff will be able to obtain that information through the discovery process; should that not prove to be true, the action will be dismissed.").

In light of the Second Circuit's decision in <u>Davis</u> and because discovery in this case is currently ongoing,[14] the Court hereby reinstates Geico's common law fraud claims against the John Doe management defendants.

### III.    CONCLUSION

For all of the foregoing reasons, Geico's motion for reconsideration is GRANTED. The Court hereby reinstates (1) Geico's Section 1962(c) and 1962(d) claims against the management defendants; and (2) its common law fraud claims against the John Doe management defendants.

SO ORDERED.

Dated:         Brooklyn, New York
               November 9, 2011


_____/s/_____
I. Leo Glasser
Senior United States District Judge

---

[14] The discovery deadline is February 10, 2012.  Docket Minute Entry dated July 28, 2011.